CASE 28—PETITION EQUITY—JANUARY 7.

# Noland's ex'r vs. Golden, &c.

APPEAL FROM MADISON CIRCUIT COURT.

A slave, who voluntered in 1865, to serve in the Federal army, being rejected as unfit for service, procured a certificate of freedom from a provost marshal, did not thereby become a free man. Having returned to his hirers, and continued in their service under a new contract made by and with the slave, the hirers were liable to the owner of such slave for his actual services for the time he served them that year, up to the date of the adoption of the constitutional amendment abolishing slavery, notwithstanding it was stipulated in the contract that, if he should voluntarily leave their service during the term of hire, "*they were to pay only for the time he served.*" In an action in equity to adjust the liability of the parties after the slave became free by the manumitting amendment to the Constitution, he was a proper party, as, by the contract, the slave was to receive a portion of the hire at the end of the year, and had received it, and the hirers were entitled to a credit for that amount.

C. F. BURNAM, and
J. W. CAPERTON,　　　　　　　　　　　　　·For Appellant,
　　　　　　　　　　CITED—
15 *B. Mon.*, 190; 14 *B. Mon.*, 296.
2 *Duvall*, 188; *Hughes vs. Todd.*

S. TURNER,　　　　　　　　　　　　　　　For Appellees.

JUDGE ROBERTSON DELIVERED THE OPINION OF THE COURT:

*Golden* and *Adams* executed their promissory note to *John Noland* for two hundred and seventy-five dollars, for the hire, for the year 1865, of his slave *Allan*, a blacksmith, qualified by the stipulation, that if *Allan* should

voluntarily leave their service during the term of hire, they were to pay only for the time he served. *Allan* served until May, 1865, when he went to Maysville, volunteered as a Federal soldier, but was rejected as unfit, procured a certificate of freedom from a provost marshal, returned to *Golden and Adams*, and served them until December, 1865, under a contract between him and them to pay him, instead of his owner. He was thus in their service nearly ten months, and whether they paid him anything, or how much, under their contract with *him*, the record does not clearly show.

*Noland* having died shortly after the date of the note, the obligors paid to his executor ninety-one dollars and fifty cents, as the amount due for the service until *Allan* left for Maysville, but refused to pay any more.

On the note the parties indorsed a stipulation for payment to *Allan* himself of seventy-five dollars out of the hire at the end of the year; and it rather appears that, in some way, he received that sum from the appellees.

To adjust the rights of all parties, and coerce the payment of as much of the note as the executor claimed to be justly due to him, he brought this suit in equity against the obligors and the said *Allan*, who, as a free man under the emancipating amendment of the Constitution, was a proper party. On the final hearing the circuit court dismissed the petition.

As adjudged by this court in the case of *Hughes vs. Todd* (2 *Duvall*, 188), an actual enlistment into the Federal army would not have made *Allan* a free man; and certainly the felonious certificate of the intermeddling provost had no liberating effect.

When, therefore, *Allan* returned to his hirers, he was still *Noland's* slave, and he continued a slave until the 20th of December, 1865. Consequently, the contract

made with him by *Golden* and *Adams* was illegal and void; and whether he served them afterwards under that contract or not, or whether he would have continued to serve them without some such agreement, this court neither deems essential nor can judicially know. The controlling fact is, that they actually enjoyed the benefit of his services; and, in good faith to the owner, were bound to treat him as a slave, and to pay him nothing as a freeman. Consequently, they are entitled to no credit for what they may have paid him for his services, and are liable on their note for all the time he actually served them.

But, although the indorsement, allowing *Golden* and *Adams* to pay *Allan* seventy-five dollars, was not enforceable, yet, as under that authority from *Noland*, they paid the seventy-five dollars, the executor, appealing to equity, cannot equitably withhold a credit for as much of that sum as *Allan* did not forfeit by his voluntary abandonment of the service to the resulting loss of his owner. After thus correspondently reducing the seventy-five dollars, the residue should be credited on the note. And it seems to this court that this and the ninety-one dollars and fifty-cents paid to the executor, and a credit for the time *Allan* did not serve *Golden* and *Adams*, constitute the total amount of credit to which they are entitled on their note. As the deduction of these credits will leave a balance still due on the note, the dismission of the petition was erroneous.

Wherefore, the judgment is reversed, and the cause remanded for further proceedings and decree, according to this opinion.